IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION



**FILED**

AUG 15 2013

Clerk, U.S. District Court
District Of Montana
Missoula

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 06-76-GF-DWM |
| | CV 11-06-GF-DWM |
| Plaintiff/Respondent, | |
| vs. | ORDER |
| SCOTT HEDDINGS, | |
| Defendant/Movant. | |

On January 21, 2011, Defendant/Movant Scott Heddings filed a motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. Heddings filed his original motion pro se but is now represented by attorney Mark Meyer.

Counsel filed a third amended § 2255 motion on October 9, 2012. The United States filed an Answer on February 1, 2013, and Heddings filed a Reply on April 16, 2013. On review of the pleadings, it is clear that an evidentiary hearing is not required. Heddings is not entitled to relief against his conviction, but he must be resentenced.

1

## I. Background

Heddings was convicted on the second Indictment filed against him. Initially, he was indicted on January 19, 2006, on one count of receipt of child pornography, a violation of 18 U.S.C. § 2252A(a)(2) (Count 1); one count of possession of child pornography, a violation of 18 U.S.C. § 2252A(a)(5)(B) (Count 2); one count of destroying property to prevent its seizure, a violation of 18 U.S.C. § 2232(a) (Count 3); and a forfeiture count (Count 4). Indictment (doc. 1) at 1-3, *United States v. Heddings*, No. CR 06-09-GF-SEH (D. Mont. filed Jan. 19, 2006). At arraignment on March 29, 2006, Bryan Norcross was appointed to represent him. Minutes (doc. 5), Order (doc. 7), *Heddings*, No. CR 06-09-GF. On April 3, 2006, the United States moved to dismiss the Indictment on the grounds that Heddings had "pending state court charges that need to be resolved prior to any federal charges being filed." The United States represented it did not contact Norcross prior to filing its motion to dismiss. The motion to dismiss was granted. Mot. to Dismiss (doc. 12) at 1-2; Order (doc. 13) at 1, *Heddings*, No. CR 06-09-GF.

On July 24, 2006, Heddings was re-indicted on identical charges in this case. Indictment (doc. 1) at 1-3. Heddings was writted out of state custody on February 27, 2007. Order (doc. 4); Warrant Return (doc. 10). Bryan Norcross was again appointed as counsel. Minutes (doc. 5); Order (doc. 7).

2

Following a hearing on Heddings' motion to suppress, which was denied, Minutes (doc. 33), Heddings filed a motion to change his plea. On May 1, 2007, in open court, he pled guilty to all three counts of the Indictment. Minutes (doc. 38).

A presentence report was prepared. Based on a total offense level of 37 and a criminal history category of I, Heddings' advisory guideline sentencing range was 210-262 months. The statutory maximum sentence was 20 years. 18 U.S.C. § 2252A(a)(2), (b)(1).

On September 6, 2007, Heddings was sentenced to serve 240 months on Count 1, 120 months on Count 2, and 60 months on Count 3, all terms to run concurrently, to be followed by a life term of supervised release. Minutes (doc. 52); Judgment (doc. 57) at 2-3.

Heddings appealed the sentence. In light of *United States v. Davenport*, 519 F.3d 940, 947-48 (9th Cir. 2008), his case was remanded for dismissal of either Count 1 or Count 2. Mem. at 1-2, *United States v. Heddings*, No. 07-30357 (9th Cir. Dec. 15, 2008) (unpublished mem. disp.) (doc. 70).

On January 21, 2009, Count 2 of the Indictment was dismissed without prejudice to refiling if Heddings' conviction on Count 1 should be vacated in future, and an Amended Judgment was entered. Order (doc. 75); Am. Judgment (doc. 77) at 1-2. On February 11, 2009, following a hearing, Heddings' motions for

3

reconsideration and resentencing were denied. Minutes (doc. 93); Order (doc. 94).

Heddings again appealed. On February 8, 2010, Heddings moved to dismiss the appeal on the grounds that "if this Court remands for re-sentencing, Mr. Heddings could be exposed to a greater sentence than originally received due to sentences that were imposed after the original federal sentence." Mot. to Dismiss at 1, No. 09-30058 (9th Cir. Feb. 8, 2010).[1] On February 10, 2010, the court of appeals dismissed the appeal. Order at 1, *United States v. Heddings*, No. 09-30058 (9th Cir. Feb. 10, 2010).

Heddings timely filed his § 2255 motion on January 21, 2011. Mot. § 2255 (doc. 13); 28 U.S.C. § 2255(f)(1).

## II. Analysis

Heddings makes two claims against his conviction. Although he makes several claims for relief against his sentence, only one must be addressed.

All of Heddings' claims allege ineffective assistance of counsel. Such claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). Heddings must show (1) that counsel's performance fell below an objective standard of

---

[1] On October 23, 2007, about six weeks after his federal sentence was imposed, Heddings pled guilty to incest and was sentenced in Cascade County to serve twenty years in the custody of the Department of Corrections, with 16 years suspended. *See* Pet. for Writ of Habeas Corpus at 2 ¶¶ 1-3, *Heddings v. Mahoney*, No. OP 09-0104 (Mont. filed Feb. 23, 2009); Correctional Offender Network, https://app.mt.gov/conweb (accessed Feb. 11, 2011).

4

reasonableness, *id.* at 687-88, and (2) that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. "[T]here is no reason . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

## A. Dismissal and Re-Indictment

Heddings asserts that counsel Bryan Norcross was ineffective because he failed to move to dismiss the indictment based on the dismissal of the first indictment.

Counsel could have moved for dismissal with prejudice in CR 06-09-GF following the dismissal without prejudice, *see United States v. Hayden*, 860 F.2d 1483, 1489 (9th Cir. 1988) (citing *Untied States v. Derr*, 726 F.2d 617, 619 (10th Cir. 1984)), which would have the effect of foreclosing proceedings on the second indictment. Or counsel could have moved to dismiss the second indictment. The fundamental question is whether filing the motion in either case was something that no competent lawyer, acting reasonably, could have failed to do.

Heddings refers variously to Fed. R. Crim. P. 48(a), the Sixth Amendment right to a speedy trial, the Speedy Trial Act, and the Fifth Amendment right to due process.

### 1. Speedy Trial

Time passing before indictment or between an initial, dismissed indictment and the filing of a second indictment does not factor in to a Sixth Amendment speedy trial

5

analysis. *United States v. Loud Hawk*, 474 U.S. 302, 311 (1986); *United States v. Marion*, 404 U.S. 307, 319 (1971). Heddings was indicted on July 24, 2006. He appeared on February 27, 2007, and pled guilty on May 1, 2007. The interval between indictment and disposition does not "approach[] one year," *see Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992), and the charges were not the sort likely to require expedition, *see Barker v. Wingo*, 407 U.S. 514, 531 & n.31 (1972).

As for the Speedy Trial Act, the seventy-day clock begins to run when the defendant appears on an indictment. "If . . . an information or indictment is filed charging such defendant with the same offense or an offense based on the same conduct or arising from the same criminal episode," the time limits for trial "shall be applicable with respect to such *subsequent* complaint, indictment, or information, as the case may be." 18 U.S.C. § 3161(d)(1) (emphasis added). Without excluding time that could have been excluded for pending motions, 18 U.S.C. § 3161(h)(1)(D), Heddings pled guilty on Day 63 after his initial appearance and arraignment.

Neither prong of the *Strickland* test is met with respect to the Sixth Amendment right to a speedy trial or with respect to the Speedy Trial Act.

### 2. Due Process and Rule 48

"At common law, the prosecutor had the unrestricted authority to enter a *nolle prosequi* without the consent of the court at any time before the empaneling of the

jury." *United States v. Salinas*, 693 F.2d 348, 350 (5th Cir. 1982), *cited in United States v. Wallace*, 848 F.2d 1464, 1468 (9th Cir. 1988). The Federal Rules of Criminal Procedure added a leave of court requirement: "The government may, *with leave of court*, dismiss an indictment, information, or complaint." Fed. R. Crim. P. 48(a) (emphasis added). "[T]he principal purpose of the leave-of-court requirement is 'to protect a defendant against prosecutorial harassment, e.g., charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection.'" *United States v. Garcia-Valenzuela*, 232 F.3d 1003, 1008 (9th Cir. 2000) (quoting *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977) (per curiam)); *see also Salinas*, 693 F.2d at 351 ("[T]he primary purpose of the rule is protection of a defendant's rights."). When the government abuses its prerogative by acting in bad faith, that is, when it is "improperly motivated by its desire to gain a tactical advantage by selecting a more favorable time to reindict," so that its stated reason for dismissal was "a sham," *Wallace*, 848 F.2d at 1468, then "the court can and must deny the motion to dismiss," *Salinas*, 693 F.2d at 352 (internal quotation omitted). Case law on the leave-of-court requirement, however, recognizes that the executive branch "retain[s] broad discretion" to decide when, what, and whom to prosecute, and "a district court is limited in its ability to second-guess the government's decisions." *Garcia-Valenzuela*, 232 F.3d at 1007.

7

Heddings does not allege that the rationale given by the United States for dismissing the first indictment – that state charges should be resolved first – was illegitimate. He alleges, instead, that this rationale must have been a pretext for some other nefarious purpose, because state charges were not, in fact, resolved first.

But Heddings does not explain what that nefarious purpose was. He points out that his wife was tried after the dismissal of CR 06-09-GF, on a charge of destroying evidence, based on her alleged deletion of computer files at Heddings' insistence. (She was acquitted.) Heddings does not explain what unfair tactical advantage the prosecution gained or thought it could gain by dismissing his indictment before his wife's trial. He attempts to point out that he lost the opportunity to receive additional credit against his eventual federal sentence, but any defendant writted out of state custody faces a strong possibility of not receiving credit against both state and federal sentences.

Nor does Heddings explain why there is a reasonable probability that the outcome would have been different had he either objected to the motion to dismiss the first indictment or made a motion to dismiss the second. The Court is not aware of any authority, and Heddings has cited none, holding that a federal prosecutor's decision to defer federal proceedings while state authorities investigate and perhaps prosecute is illegitimate. *Cf. United States v. Lovasco*, 431 U.S. 783, 789-96 (1977)

8

(refusing to create rule that United States must indict as soon as it has probable cause or proceed to trial as soon as it has proof beyond reasonable doubt). The Supreme Court has said that the non-occurrence of the reason a prosecutor sought delay "cannot transform an otherwise permissible delay into an impermissible one." *Id.* at 795 n.16. Heddings does not claim the prosecutor knew, at the time she moved for dismissal, the state proceedings would not move ahead at all until after the federal case was resolved, so he cannot logically rely on the "the timing of events" to show she acted in bad faith. Nor does he explain what advantage the United States did or could have gained as a result of the dismissal.[2] *Compare, e.g., United States v. Fields*, 475 F. Supp. 903, 905-07 (D.D.C. 1979) (evidence showed first indictment was obtained solely to compel defendant to cooperate against third party); *United States v. Salzmann*, 417 F. Supp. 1139, 1173-74 (E.D.N.Y.), *aff'd*, 548 F.2d 395 (2d

---

[2] There is a statutory reason a federal prosecutor in the District of Montana might defer a federal case until resolution of state charges. State law prohibits a state prosecution on charges arising out of the "same transaction" already prosecuted in another jurisdiction. Mont. Code Ann. § 46-11-504(1). So, for instance, a defendant convicted in federal court of receiving or possessing child pornography at a certain place and time cannot later be convicted in a Montana state court for sexual abuse of children, pursuant to Mont. Code Ann. § 45-5-625(1)(e), based on his receipt or possession of child pornography at the same place and time. *See, e.g., State v. Neufeld*, 212 P.3d 1063, 1066 ¶¶ 17-21 (Mont. 2009); *State v. Gazda*, 82 P.3d 20, 22-25 ¶¶ 11-25 (Mont. 2003). Under federal law, there is no bar to a State's prosecution for a state offense identical in every respect to a federal offense, *see Heath v. Alabama*, 474 U.S. 82, 88 (1985); *United States v. Wheeler*, 435 U.S. 313 (1978), *followed in United States v. Lara*, 541 U.S. 193, 210 (2004). Under Montana state law, the state prosecution must occur first or not at all. But, again, Heddings does not even claim that deferring a federal prosecution pending disposition of Montana state charges is illegitimate, and the Court knows of no authority holding that it is.

9

Cir. 1976) (evidence showed prosecutor delayed until defendant could no longer be sentenced as a youth); *see also Lovasco*, 431 U.S. at 797 n.19 (describing two "sinister" reasons a prosecutor might dismiss an indictment).

Further, the record shows reason to believe resolution of the Montana charges was imminent at the time the first indictment was dismissed. In CR 06-09-GF, the pretrial services officer reported that the Cascade County prosecutor "advised there is a pending Plea Agreement" in a case involving "the defendant sexually assaulting one of his step children during the Summer of 2000." Pretrial Services Report (doc. 9) (under seal) at 3. The report was signed on March 27, 2006, and filed on Wednesday, March 29, 2006, after Heddings' initial appearance and arraignment. The indictment was dismissed on Monday, April 3, 2006. There does not appear to be anything nefarious about these events. In addition, after the second indictment was filed, several months passed before Heddings was again writted out of state custody. All these facts support an inference that the prosecutor was, indeed, expecting resolution of state charges. There is no support for a finding of bad faith or, therefore, of support for dismissal under Fed. R. Crim. P. 48 or the Fifth Amendment. *United States v. Hayden*, 860 F.2d 1483, 1489 (9th Cir. 1988).

Under the circumstances here, it is not possible to find that no competent attorney could have failed to move for dismissal, nor is there a reasonable probability

10

that such a motion would have been granted if made. This claim is denied.

### B. *Davenport* Remand

Heddings' second claim against his conviction alleges that his due process rights were violated "[s]pecifically . . . to the extent the Court allowed the Government to decide which count to dismiss." Third Am. § 2255 Mot. (doc. 154) at 12. The Court did not allow the Government to decide which count to dismiss. Although the prosecution filed a motion to dismiss Count II, it is plain on the face of the record that the Court did not act on the motion. It acted on the mandate. The Order said, in its entirety:

> On December 15, 2008, the United States Court of Appeals for the Ninth Circuit issued its memorandum in this case in which it "vacate[d] the judgment and remand[ed] in light of *United States v. Davenport*" and directed this Court on remand to "vacate either Heddings' conviction for receipt or his conviction for possession of child pornography, 'allowing for it to be reinstated without prejudice if his other conviction should be overturned on direct or collateral review.'" (Ninth Circuit Court of Appeals, Memorandum, Pages 1-2, Docket No. 70) (December 15, 2008).) Mandate was filed on January 12, 2009.
> ORDERED:
> 1. Defendant's conviction on Count II of the Indictment, possession of child pornography in violation of 18 §U.S.C. [sic] 2252A(a)(5)(B), is VACATED to be reinstated without prejudice if his conviction on Count I is overturned.
> 2. The United States shall inform the Court on or before January 26, 2009, of whether it wishes to pursue its Motion to Dismiss [Docket No. 73].

Order (doc. 75) at 1-2 (footnote inserted in text in brackets).

11

When the judges of this Court act on a motion, they say so. They grant it, or deny it, or reserve ruling, or otherwise make clear what is ruled on and what the ruling is. The prosecution's motion to dismiss Count II was not granted. And the only reason to ask the United States whether it wanted to pursue this motion was precisely that the Court *did not act on it*. On January 29, 2009, after the United States responded, the Court dismissed the motion as moot. Order (doc. 83).

Moreover, counsel filed a motion for reconsideration of the dismissal of Count II, pressed the motion at a hearing, and was unsuccessful. Mot. for Reconsideration (doc. 81); Minutes (doc. 93); Order (doc. 94). The Court denied the motion on the grounds that it acted on the specific language of the Ninth Circuit's remand. Neither the remand order nor *Davenport* directed the Court to solicit the input of the parties or identified criteria to guide discretion. Before the appellate court's decision in *United States v. Hector*, 577 F.3d 1099 (9th Cir. 2009), it was not unreasonable for attorneys and judges alike to conclude that the lesser-included conviction ought to be vacated where the defendant pled guilty to the greater as well as the lesser offense. *Cf. Hector*, 577 F.3d at 1103 (rejecting analogy to *Sansone v. United States*, 380 U.S. 343 (1965)); Mot. Hr'g Tr. (doc. 102) at 8:15-10:15 (interpreting appellate court's mandate and reference to *Davenport* as directing vacation of possession conviction "because possession of child pornography is a lesser-included offense").

Heddings fails to demonstrate anything unreasonable about counsel's performance as to the *Davenport* remand. He also fails to identify any reasonable probability of a different outcome. This claim is denied.

## C. Voluntary Dismissal of Appeal

Heddings also claims that counsel was ineffective because she "fail[ed] to adequately advise Heddings of the potential impact on his ability to raise issues on appeal that would result from a voluntary dismissal of the second appeal." Third Am. § 2255 Mot. at 8.

Heddings does not allege any facts to support his claim that counsel failed to (or even needed to) explain that voluntarily dismissing the appeal would mean the appeal would not be heard. He does not explain what he thought would happen, if not dismissal of the appeal. While Heddings asserts a litany of sentencing claims he might have raised if he pursued the appeal to a ruling, he fails to allege that *no* reasonable attorney could have believed that "Heddings could be exposed to a greater sentence than originally received due to a subsequent conviction in Missouri state court for sexual assault." *Id.* at 5; *see, e.g.*, U.S.S.G. §§ 4A1.1(a), (b), 4A1.2(a)(4) & Application Note 1 para. 2.

Nor does Heddings allege that no reasonable attorney could have failed to believe that, if the post-*Hector* appeal were successful and the case remanded for the

court to exercise its discretion to sentence him on either the greater or the lesser offense, the district court would exercise its discretion to sentence him on the lesser offense. Heddings' other sentencing arguments, focused on his guidelines calculation, were significantly more persuasive.

### D. U.S.S.G. § 5G1.3(b)

A sentencing court has no authority to order the Bureau of Prisons to award a defendant credit for time spent in state custody. *United States v. Wilson*, 503 U.S. 329, 333 (1992); *Taylor v. Reno*, 164 F.3d 440, 445-47 (9th Cir. 1998); *Del Guzzi v. United States*, 908 F.2d 1269, 1271 (9th Cir. 1992). U.S.S.G. § 5G1.3 provides the means for the sentencing court to take into account the amount of time a federal defendant has spent in custody before the federal sentence is imposed. When subsection (b) applies, the sentencing court must determine what the federal sentence should be, then reduce the federal sentence by the number of months necessary to ensure the defendant's federal sentence is truly concurrent. In addition, both today and at the time of Heddings' sentencing, U.S.S.G. § 5G1.3 Application Note 2(C) directed the sentencing court how to communicate its action to the Bureau of Prisons. Although U.S.S.G. § 5G1.3(c) does not require the same procedure, it allows for the same procedure, because it authorizes the sentencing court to make a sentence concurrent, consecutive, or partially concurrent and partially consecutive "to achieve

14

a reasonable punishment for the [federal] offense."

Heddings asserts that counsel was ineffective for failing to urge the sentencing court to apply § 5G1.3(b) to give him credit for time he spent in custody before his federal sentencing. Although Heddings had not yet been sentenced[3] in any other court at the time of his federal sentencing, Presentence Report ¶ 35, four out of five federal appellate courts that had addressed the issue recognized that a federal court could anticipate a sentence in another jurisdiction and consider whether the federal sentence should run concurrently or consecutively to that yet-to-be-imposed sentenced. The lone outlier was the Ninth Circuit. *See Setser v. United States*, __ U.S. __, 132 S. Ct. 1463, 1468 (2012) (citing cases).

Although it is not clear that advocating for application of U.S.S.G. § 5G1.3 would have been successful, there is at least a reasonable probability that it would have had some effect on the total sentence imposed. Heddings, after all, was initially indicted on January 19, 2006. When he was re-indicted, he served seven more months, apparently in state custody, *compare* Pet. for Writ ad Prosequendum (doc. 3), Warrant & Return (doc. 10) at 1 (showing execution of warrant at Cascade County

---

[3] Heddings also had not yet been *convicted* in any other court. Although his offense level was increased by five levels because of the conduct underlying the state proceedings, Presentence Report ¶ 21, he did not receive any criminal history points, Presentence Report ¶¶ 35-40; U.S.S.G. §§ 4A1.1(a), (b), 4A1.2(a)(4) & Application Note 1 para. 2. The United States does not assert that this potential distinction makes any difference. The Court will not consider the unmade argument.

jail), *with* Presentence Report face page (stating defendant was taken into custody on the date of his appearance in this Court), before appearing in federal court. He was not sentenced until September 6, 2007. Although the United States claims the sentencing court "chose not to" exercise its discretion to reduce the sentence for time already served, Answer (doc. 159) at 30, the record flatly contradicts its claim. *See* Presentence Report, *passim*; Sentencing Tr. (doc. 67), *passim* (not mentioning the issues of consecutive or concurrent sentences or time spent in custody before sentencing). No one – not defense counsel, and also not the prosecutor and not the probation officer – suggested there was any issue to consider regarding time already served in custody.

Finally, it is worth noting that the State of Montana has taken the position in litigation that the state sentence was recommended by the prosecutor and intended by the state district court to be entirely subsumed by the already-imposed federal sentence. *See* Order at 2-3, *Heddings v. State*, No. OP 11-0604 (Mont. Mar. 13, 2012), *available at* http://supremecourtdocket.mt.gov (accessed Aug. 12, 2013). That intention was frustrated by failure to recognize that, under federal law, Heddings' state custody had priority over his federal custody. Rather than being placed in the custody of the Bureau of Prisons at the conclusion of the state proceedings, therefore, Heddings was transported to Montana State Prison. When he was paroled to the

federal sentence, the Bureau of Prisons refused to give him credit against the federal sentence for the time he had already spent in custody. 18 U.S.C. § 3585(b). And the Bureau also refused to retroactively designate Montana State Prison as his "official detention facility," 18 U.S.C. § 3584(a), thereby concluding that the federal sentence commenced some time after it was imposed, 18 U.S.C. § 3585(a). The key to avoiding these problems, to the extent there is a key, is U.S.S.G. § 5G1.3. *Schleining v. Thomas*, 642 F.3d 1242, 1244-45 & n.2 (9th Cir. 2011); *see also Reynolds v. Thomas*, 603 F.3d 1144, 1148-53 (9th Cir. 2010); *Taylor v. Sawyer*, 284 F.3d 1143, 1150 (9th Cir. 2002); *Thomas v. Brewer*, 923 F.2d 1361, 1364-69 (9th Cir. 1991).

The claim relating to U.S.S.G. § 5G1.3 will be granted. Although defense counsel was not alone in overlooking it, it is nonetheless unreasonable to overlook an applicable guideline. There is at least a reasonable probability that Heddings' total federal sentence would have been less than 240 months had the sentencing court taken into account some or all of the time Heddings had already spent in custody. There is also a reasonable probability that the total amount of time Heddings will spend in custody will be less after application of § 5G1.3. While there is also a reasonable probability he will spend more time in custody (as appellate counsel advised him), he is entitled to a *de novo* determination of his federal sentence.

**D. Remaining Claims**

Because re-sentencing is required and will be conducted *de novo*, all of Heddings' claims regarding his sentence are moot.

## Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Heddings' claims against his conviction fail to carry the heavy burden attached to a claim of ineffective assistance of counsel. A reasonable jurist could not find that *no* reasonable attorney would have failed to seek dismissal with prejudice of the first indictment or that *no* reasonable attorney would have failed to move to dismiss the second indictment. There was no violation of the constitutional or statutory right to a speedy trial, and there was no reason to believe the United States acted in bad faith in dismissing the first indictment.

18

Heddings' claim that the Court dismissed the possession count based on the prosecution's motion simply misstates the record. The Court plainly acted on the Ninth Circuit's mandate, not the prosecution's motion. Further, counsel moved for reconsideration of the dismissal of the possession count. She was unsuccessful, for the reasons the Court explained on the record at the hearing. There is no basis in the record for a claim of ineffective assistance and no reason to think any other facts not in the record would be relevant. Nor does Heddings identify any reason to believe the outcome might have been different.

As to Heddings' voluntary dismissal of his second appeal, he does not allege any facts that could show he did not understand that a voluntary dismissal of the appeal meant that there would not be an appeal. He does not even challenge counsel's advice that he might face a higher sentence if he prevailed on appeal and his case was remanded for resentencing. Nor does he provide any reason to think there might have been a different outcome if his case had been remanded for reconsideration after *Hector* held that district courts were not required to sentence on the greater offense as opposed to a lesser included offense.

Heddings' claims against his conviction for receipt of child pornography fall well short of a "substantial showing of the denial of a constitutional right." A COA is not warranted on those claims.

Because re-sentencing will be *de novo*, Heddings' sentencing claims can be presented on their own merits, rather than through the lens of ineffective assistance of counsel. Consequently, Heddings will have no basis to complain of the denial of his § 2255 claims against his sentence. A COA will be denied as to those claims. However, should the United States appeal successfully from the granting of his § 2255 motion, it should be clear that this Court has not addressed those claims and they should be remanded for fair consideration.

Accordingly, IT IS HEREBY ORDERED as follows:

1. Heddings' Third Amended § 2255 Motion (doc. 154) is GRANTED IN PART and DENIED IN PART, as follows:

     a.    All claims against the conviction are DENIED;

     b.    The claim that counsel was ineffective for failing to advocate for application of U.S.S.G. § 5G1.3 is GRANTED; and

     c.    All other claims are DENIED AS MOOT.

2. The Amended Judgment of January 21, 2009 (doc. 77), is VACATED.

3. A certificate of appealability is DENIED as to all claims resolved against Heddings.

4. On the date a new criminal judgment is entered, the Clerk of Court shall enter judgment by separate document in the civil case in favor of Heddings and

against the United States as to the claim of ineffective assistance in connection with

U.S.S.G. § 5G1.3 and in favor of the United States and against Heddings on all other

claims.

  5.  A new sentencing hearing will be set by separate Order.

DATED this ___15___ day of August, 2013.

17:10 pu

_____
Donald W. Molloy
United States District Court